**SIGNED THIS: September 15, 2011**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TROY A. RIEKENA and ) | |
| JANICE K. RIEKENA, ) | No. 11-81158 |
| ) | |
| Debtors. ) | |

O P I N I O N

This matter is before the Court following an evidentiary hearing held on the motion of the Chapter 13 Trustee, Michael D. Clark (TRUSTEE), to dismiss Janice Riekena from the case due to her alleged ineligibility under 11 U.S.C. § 109(g)(2).

During a period of separation from her husband Troy, Janice filed an individual Chapter 7 petition on July 27, 2010. Since Troy continued to reside in the marital residence in Bradford, Illinois, Janice stated an intent to surrender the home to the mortgagee, Bank of America. After converting her case to Chapter 13 on October 12, 2010, Janice filed a plan, later confirmed, proposing to surrender the home to Bank of America, which moved to modify the automatic stay so that it could commence foreclosure. Relief from the stay was

ordered on November 23, 2010.  Within a month after her plan was confirmed, Janice moved to dismiss her case.  The motion was granted and the case dismissed by order entered on May 3, 2011.

Troy and Janice (together the "DEBTORS") reconciled and Janice testified that she moved back into the home in February, 2011.  Troy, a construction worker, had been laid off during much of 2010 and early 2011.  He regained employment as a truck driver in April, 2011.  Troy had fallen behind on the mortgage payments, however.  As of the filing of their joint Chapter 13 petition on May 4, 2011, according to the proof of claim filed by BAC Home Loan Servicing, LP, the mortgage arrearage was $5,971.45.

The joint case was filed on May 4, 2011, one day after dismissal of Janice's individual case.  Janice testified that she voluntarily dismissed her individual case because she was back with Troy, he needed to file for bankruptcy relief, and she believed it would be "cheaper" to have a single joint case rather than two separate cases.  The plan filed in the joint case proposes to cure the arrearage and retain the house.  The DEBTORS presented evidence that the mortgagee has not commenced a foreclosure action.

The TRUSTEE filed a motion to dismiss Janice, only, as a debtor from the joint case, alleging that she is ineligible to be a debtor under section 109(g)(2), which provides:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if–
> \* \* \*
> (2) the debtor requested and obtained the voluntary dismissal of the case *following* the filing of a request for relief from the automatic stay provided by section 362 of this title.  (Emphasis added).

11 U.S.C. § 109(g)(2).

2

The DEBTORS oppose the TRUSTEE'S motion, arguing that the word "following" implies a causal connection between the stay relief motion and the subsequent voluntary dismissal. The DEBTORS contend that the undisputed evidence at trial, where Janice was the sole witness, demonstrates that Janice's dismissal of her case had nothing to do with the stay relief motion. The DEBTORS point out that no foreclosure action has been filed and that even if the mortgagee intends to foreclose, Troy could have saved the home by filing an individual case, so the fact that Janice is a codebtor in the case has not prejudiced the mortgagee.

The TRUSTEE contends that the word "following" plainly and unambiguously means "after" or "later in time" with no requirement of a causal connection between the stay relief motion and the dismissal of the case. Alternatively, the TRUSTEE argues that there is evidence of a causal connection since Janice's individual confirmed plan provided for surrender of the house. When she and Troy reconciled, she changed her mind and needed to get out from under the binding surrender provision, so she dismissed her case and now proposes to retain the house in her new plan. So, according to the TRUSTEE, there is causation.

It should be noted that the mortgagee's servicer, BAC, objected to the DEBTORS' plan raising the argument that Janice was ineligible. BAC failed to appear at the hearing, however, and has filed no further pleading.

Notwithstanding that the provision in question was enacted twenty-seven years ago, its interpretation is not settled.[1]  A little background is helpful. When the current

---

[1] Neither the Supreme Court nor the 7th Circuit Court of Appeals has addressed the issue.

3

Bankruptcy Code was enacted by the Bankruptcy Reform Act of 1978, it did not contain the ineligibility provision now found at section 109(g). The problem of repetitive filings by the same debtor as a way to avoid the effect of modification of the automatic stay soon became a widespread problem. *See In re Bystrek,* 17 B.R. 894 (Bankr.E.D.Pa. 1982); *In re Jones,* 41 B.R. 263 (Bankr.C.D.Cal. 1984); *In re Kinney,* 51 B.R. 840 (Bankr.C.D.Cal. 1985) (referring to the "epidemic of abusive multiple filings").

The primary tool available to defend against such perceived abuse, was the requirement that the Chapter 13 plan be proposed in good faith. 11 U.S.C. § 1325(a)(3). Courts quickly made a debtor's history of multiple filings a critical point of inquiry in the good faith analysis. *See, e.g., Deans v. O'Donnell,* 692 F.2d 968 (4th Cir. 1982) (factors to consider in deciding whether plan is proposed in good faith include the debtor's past bankruptcy filings); *Matter of Kull,* 12 B.R. 654, 659 (S.D.Ga. 1981) (good faith analysis requires bankruptcy courts to consider the frequency with which the debtor has sought bankruptcy relief); *In re Landis,* 29 B.R. 235, 239 (Bankr.D.Kan. 1983) (plan could not be confirmed for lack of good faith where debtor had filed three chapter 13 cases within two years of receiving chapter 7 discharge); *In re Frank,* 69 B.R. 129, 132 (Bankr.C.D.Ill. 1986) (past bankruptcy filings is relevant factor in good faith analysis).

The difficulty with the good faith requirement, however, was the breadth of the inquiry, necessitating a consideration of the totality of the debtor's circumstances on a case-by-case basis. *In re Rimgale,* 669 F.2d 426, 431-32 (7th Cir. 1982); *Frank, supra* (identifying thirty-two (32) separate factors that courts had considered when examining good faith). As a mechanism to address the problem of repetitive filings, good faith was a clumsy,

inefficient tool that required lengthy hearings and lead to inconsistent results. Congress apparently had this in mind when it enacted the Bankruptcy Amendments and Federal Judgeships Act of 1984, Pub. L. No. 98-353, 98 Stat. 341 (BAFJA), whereby the subject provision, quoted above, was added as section 109(f), later redesignated as 109(g). Congress chose to deal with it in a very broad (and perhaps harsh) manner, imposing a 180 day moratorium on the right to refile.[2] Any perceived harshness is tempered, however, by the fact that the provision comes into play only upon voluntary action of the debtor.[3]

It is widely acknowledged that Congress enacted section 109(g)(2) for the purpose of curbing abusive repetitive filings by debtors attempting to nullify a stay relief order entered in a prior case by obtaining a new automatic stay upon refiling. *Matter of Ulmer,* 19 F.3d 234, 235 (5th Cir. 1994); *In re Beal,* 347 B.R. 87 (E.D.Wis. 2006); *Kinney,* 51 B.R. at 846. Reported cases also reflect a significant sentiment that Congress may have swept with too broad a broom by removing a debtor's eligibility because of the timing of two not necessarily related motions, one by a creditor for stay relief and one by the debtor for dismissal of the case. Motivated by this sentiment, a number of courts have construed section 109(g)(2) in a less sweeping fashion than might appear required by the statutory language.

---

[2] The perceived harshness of section 109(g)(2) derives from the fact that a stay relief motion involves a single creditor, while ineligibility prevents the debtor from obtaining relief vis-á-vis his entire body of creditors, leading courts to question whether the remedy is disproportionate to the wrong. Perhaps out of frustration with the overbroad good faith inquiry, courts developed the targeted remedy of *in rem* stay relief, where an order is entered stating that the automatic stay shall not apply to certain specifically identified property in the current or any future case filed by the debtor or any transferee of the debtor. *See Kinney,* 51 B.R. at 846; *In re Amey,* 314 B.R. 864 (Bankr.N.D.Ga. 2004); *In re Fernandez,* 212 B.R. 361 (Bankr.C.D.Cal.1997). In 2005, BAPCPA drastically amended section 362, adding special provisions for repeat filers at section 362(c) and section 362(d)(4) that provides an alternative basis for stay relief as to real property if the petition was filed as part of a scheme to delay or defraud involving an unauthorized transfer of title or repeat filings.

[3] It is not rare for debtors' attorneys to admit in court to a desire to see their case dismissed, while expressing a reluctance to so move, to avoid triggering the refiling bar of section 109(g). Most Chapter 13 debtors are able to contrive a default on their plan payments so as to trigger a motion to dismiss by the trustee, which they then do not oppose.

5

*In re Richter,* 2010 WL 4272915 (Bankr.N.D. Iowa 2010), relied on by the DEBTORS, is a recent opinion where the court reviewed the various interpretational approaches taken by courts with respect to section 109(g)(2). The court identified four district categories of cases, labeling them the (1) strict interpretation/mandatory approach, (2) equitable – discretionary approach, (3) causal connection approach, and (4) pending motion approach.[4]

The *Richter* court adopted what it referred to as a combination of the pending motion and discretionary approaches, recognizing an exception to the literal interpretation of the statute where the stay relief motion is no longer pending or has been resolved before the voluntary dismissal of the case occurs. This Court disagrees with *Richter* to the extent that it would not apply section 109(g)(2) where the stay relief motion has been granted. A secured creditor is subject to an adverse effect of a refiling where stay relief was obtained in a prior case but where the creditor has not yet completed a foreclosure or UCC sale of its collateral before the debtor's refiling.

The DEBTORS argue for the causal connection approach, asking the Court to interpret the statutory term "following" to mean "because of," so that if the voluntary dismissal is not causally connected to the stay relief motion, the refiling bar does not apply. According to the TRUSTEE, "following" should be interpreted literally or strictly to mean "occurring after" so the refiling bar arises wherever the motion to dismiss is filed after the stay relief motion regardless of what motivated the dismissal motion. The TRUSTEE'S position allows no exception for cases where the lift stay motion was denied or withdrawn or where the foreclosure or UCC sale has been completed.

---

[4] The *Richter* opinion contains several supporting case citations for each category, which need not be repeated here.

6

This Court agrees with the district court in *In re Hogan,* 2004 WL 2806206 (N.D.Ill. 2004), that the causal connection interpretation is contrary to the plain meaning of the statute and must be rejected. It is reasonable to assume that Congress intended the broad brush rule embodied in section 109(g)(2) when "following" is defined as "occurring after," and intended to save bankruptcy courts from having to conduct factual inquiries into the debtor's state of mind, which was the regime that existed before the BAFJA amendments were enacted in 1984. *See In re Munkwitz,* 235 B.R. 766, 768-69 (E.D.Pa. 1999) (though the approach may be over-inclusive, a blanket rule to curb potential abuse of the bankruptcy code is sensible).

This Court is sympathetic to the concerns raised in and the more flexible approach adopted by the district court in *In re Beal, supra,* as sensible and consistent with the provision's purpose. There the district court declined to apply the refiling bar where the stay relief motion has been withdrawn, dismissed or denied. One could also make a case for reasonable exceptions where the moving creditor has completed its state law collateral enforcement action before the refiling or where the collateral has been redeemed or the lien otherwise released. Rather than focusing on the debtor's purpose for seeking dismissal of the case, the focus is better directed on whether imposition of a new automatic stay has an adverse effect on any creditor who moved for stay relief prior to the filing of the motion for voluntary dismissal and whose motion was not denied, dismissed or withdrawn.

In the case at bar, BAC'S stay relief motion was granted in the first case, but its foreclosure action was not even filed, much less completed, at the time of Janice's refiling.

The fact that the co-mortgagor, Troy, lawfully obtained automatic stay protection against BAC when he filed, in this Court's view, should not be a factor in determining Janice's eligibility under section 109(g)(2).[5]  Under that provision, she was not eligible to be a debtor when the joint petition was filed and the TRUSTEE'S motion will be granted.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be entered.

###

---

[5] A debtor's eligibility must be determined on an individual basis without regard to the effect of another debtor's filing. That the DEBTORS may not be able to have a joint case is, ultimately, of little consequence, and is the result of the choice made by Congress to address the repetitive filing problem with an ineligibility solution.